UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN HANLEY, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

TAMPA BAY SPORTS AND
ENTERTAINMENT LLC,

Defendant.

Case No. 8:19-cv-00550-CEH-CPT

**TAMPA BAY SPORTS AND ENTERTAINMENT LLC'S
MOTION TO DISMISS**

**I.
INTRODUCTION**

Defendant Tampa Bay Sports and Entertainment LLC ("Tampa Bay Sports") respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted.  Plaintiff alleges that Tampa Bay Sports sent text messages to his cellular telephone via an automated telephone dialing system ("ATDS") to market its products and services without his prior express consent in violation of the Telephone Consumer Protection Act ("TCPA").  However, Plaintiff's claims must be dismissed because the provision of the TCPA on which he relies, 47 U.S.C. § 227(b)(1)(A)(iii), is unconstitutional for three reasons.

First, the TCPA is an unconstitutional content-based restriction on speech.  Plaintiff's putative class action, and others like it, have a substantial chilling effect on constitutionally protected speech.  And the vehicle with which they bring such actions—the TCPA—discriminates based on the content of the speech.  For example, the TCPA prohibits calls to

1

collect private debt, but contains a blanket exemption for calls to collect government-backed debt. This discrimination occurs even when the public debt (e.g. federal student loans) and private debt (e.g. private student loans) are virtually identical. Additionally, although the TCPA prohibits calls to collect medical debt and service medical-related accounts, the Federal Communications Commission ("FCC") created an exception for other healthcare-related calls, texts, and messages. Further, the TCPA also exempts calls made for certain emergency notifications from its coverage.

The statute thus contains myriad content-based provisions and exclusions, which trigger strict scrutiny under the Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). Indeed, a number of courts, including the Fourth Circuit, have recently found that Section 227(b)(1)(A)(iii) is a content-based restriction on speech that is subject to strict scrutiny under the First Amendment. *See, e.g., Am. Ass'n of Political Consultants v. FCC*, 2019 U.S. App. LEXIS 12127 (4th Cir. Apr. 24, 2019). Likewise, the TCPA's call restrictions are also subject to strict scrutiny for the independent reason that they impose speaker-based preferences for government messages over private messages. And, as the Fourth Circuit held last week, the TCPA does not come close to surviving strict scrutiny. *Id.* at \*20.

Second, the TCPA's content and speaker-based preferences violate the Equal Protection Clause for the same reasons. Because they are not narrowly tailored to the government's interest, the differential treatment of certain speakers and their speech is unconstitutional.

Third, the TCPA's definition of an ATDS, compounded by the FCC's failure to provide adequate guidance, render Section 227(b)(1)(A)(iii) unconstitutionally vague.

Contrary to the Fourth Circuit's decision last week, the Court cannot remedy the TCPA's unconstitutionality by severing the unconstitutional exemptions. The Fourth Circuit and the

other courts that have severed the unconstitutional provisions of the TCPA fail to appreciate the unique issues raised by First Amendment free speech cases that makes severability particularly inappropriate. In free speech cases like this one, severing results in restricting even more free speech and discourages constitutional challenges because those whose speech is banned do not benefit from the remedy. Not surprisingly, therefore, when the Supreme Court has been confronted with ordinances or statutes that violate free speech, it has struck down the ordinances without even raising the possibility of severance.

Thus, the entire TCPA must be struck down as unconstitutional.

## II. ARGUMENT

### A.     Federal Rule 12(b)(6) Standard.

To survive a motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept well-pleaded factual allegations as true. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B.     The TCPA Is An Unconstitutional Restriction On Speech.

#### 1.     The TCPA Discriminates Based On The Content Of The Speech.

Since the Supreme Court's landmark First Amendment decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), which reversed Ninth Circuit law on content-based restrictions on speech, courts, including most recently the Fourth Circuit, have agreed that strict scrutiny applies because the TCPA is a content-based restriction on speech. *See, e.g.*, *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127 at *20; *Gallion v. Charter Communications,*

3

*Inc.*, 287 F. Supp. 3d 920, 924-26 (C.D. Cal. 2018), *appeal docketed* No. 18-55667 (9th Cir. May 23, 2018); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017).

These decisions agree that the TCPA is content-based, but they understate the extent to which that is so. They focus on the fact that the TCPA exempts all calls made to collect government-backed debt—regardless of whether the caller is a government entity or a private debt collector—but applies to efforts to collect a private debt. *See Gallion*, 287 F. Supp. 3d at 924-26 (discussing the TCPA's discrimination between government-backed debt and private debt). But the text of the TCPA and the FCC's implementation of it contain additional content-based restrictions.

For example, the TCPA also exempts emergency calls. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC created a further content-based exemption for calls related to "appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Declaratory Ruling, 30 FCC Rcd. 7961, 8030 ¶ 146 (July 10, 2015). The FCC declined to extend the exemption to calls related to "telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content." *Id.*

The FCC created seven conditions that must be satisfied for the healthcare-related calls exemption to apply in an apparent attempt to limit the disruption to consumers caused by such calls. *Id.* ¶ 147. The FCC did not, however, analyze whether these same requirements would

4

further the purported government interest in reducing the intrusiveness of other types of informational calls. *Id.*

Courts therefore correctly determine that the TCPA is subject to strict scrutiny but understate the extent to which it discriminates based on content.

### 2. The TCPA Discriminates In Favor of Government Speakers And Government Authorized Messages.

The TCPA's call restrictions are also subject to strict scrutiny for the independent reason that they impose speaker-based preferences for government messages over private messages. The TCPA's call restrictions apply to "any person within the United States," however the statute excludes government entities from the definition of "person." 47 U.S.C. § 227(b)(1); 47 U.S.C. § 153(39) (defining "person" as "including an individual, partnership, association, joint-stock company, trust or corporation"); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No., 02-278, Declaratory Ruling, FCC 16-72, ¶ 10 (July 5, 2016) (acknowledging that the term "person" as used in Section 227(b)(1) "does not include the federal government or [its] agents acting within the scope of their agency").

The preference for governmental entities and their agents "reflects a content preference" for favored content—government messages, and other government authorized messages—over all other speech. Because a private speaker's liability turns on whether its message is authorized by the government, the TCPA's speaker-based preference reflects a content preference for government messages and government authorized messages, independently triggering strict scrutiny. *Reed*, 135 S. Ct. at 2230.

### 3. The TCPA Fails Strict Scrutiny.

Under the First Amendment, the government "has no power to restrict expression because of its message[s], its ideas, its subject matter, or its content." *Police Dep't. of Chicago*

5

*v. Mosley*, 408 U.S. 92, 95 (1972). Thus, the Supreme Court held in *Town of Gilbert* "[c]ontent-based laws—those that target speech based on its communicative content—are *presumptively unconstitutional* and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226 (emphasis added). Further, "the differentiation between [content] . . . [must] further[] a compelling governmental interest and [be] narrowly tailored to that end." *Id.* at 2231. In other words, laws that regulate speech-based content violate the First Amendment unless they can pass an exacting form of strict scrutiny. *Id.*

### a. The Government Does Not Have A Compelling Interest For The Call Restrictions.

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" in maintaining the speech restriction, and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The burden is on the party defending a content-based restriction to advance record evidence that the harms Congress identified are real. *Id.*; *Consol. Edison of N.Y., Inc. v. Pub. Serv. Comm'n,* 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 644 (1994) (similar). The party defending a content-based restriction must also advance evidence that the content-based distinctions serve the asserted interest. *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993) (striking down city ordinance because "the [content-based] distinction bears no relationship whatsoever to the particular interests that the city has asserted.").

Plaintiffs in TCPA cases typically argue that the government has an interest in protecting the "privacy" of cell phone users to justify the TCPA's onerous restrictions. However, Congress enacted the TCPA to target a particular problem -- telemarketing robocalls that used specialized

6

machines dialing random or sequential phone numbers, or that used prerecorded/artificial messages. Pub. L. No. 102-243, § 2, ¶¶ 1, 12, 105 Stat. 2394, 2394-95 (1991). Congress's prohibition on the use of ATDSs targeted harmful telemarketing practices that emerged in the 1980s. During that time, "telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x. 369, 372 (3d Cir. 2015). Random dialing allowed callers to reach and tie up unlisted and specialized numbers. *See* S. Rep. No. 102-178, at 2 (1991). And sequential dialing allowed callers to reach all numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed. H.R. Rep. No. 102-137, at 10 (1991). The actual governmental interest was therefore to stop one very specific type of telemarketing practice—dialing randomly and sequentially generated numbers—not to protect a vague and undefined privacy interest.

In any event, as the Eighth Circuit observed, "[t]he Supreme Court has never held that [residential privacy] is a compelling interest … and we do not think that it is." *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) (citing *Frisby v. Schultz*, 487 U.S. 474 (1988) and *Carey v. Brown*, 447 U.S. 455 (1980)). Indeed, it would be dangerous precedent to allow the government – in the name of privacy – to restrict that which it considers to be "unwelcome" speech. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975) (government ordinarily lacks the power "to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener").

### b. The TCPA Is Not Narrowly Tailored To Its Objectives.

Even if the government arguably had some compelling interest supporting the TCPA's content-based prohibitions, the prohibitions are not narrowly tailored to further such an interest. *See Reed*, 135 S. Ct. at 2330-31. Narrow tailoring requires targeting "no more than the exact

7

source of the 'evil' [the regulation] seeks to remedy." *Frisby*, 487 U.S. at 485.  Thus, to survive narrow tailoring analysis, the government may not restrict constitutionally protected speech unless "it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989).

A statute's under-inclusiveness is an often-fatal defect when strict scrutiny applies because it "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint," and frequently reveals that the law does not actually advance a compelling interest.  *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011).  Nor can the restriction be over-inclusive, meaning that it cannot "unnecessarily circumscribe protected expression." *Republican Party v. White*, 536 U.S. 765, 775 (2002).  The TCPA is a rare combination of both an under-inclusive and over-inclusive statute, and therefore fails the narrow tailoring analysis.

The statute is under-inclusive in that it excludes calls to collect debt issued or guaranteed by the federal government. The text and legislative findings on the TCPA—discussed above—contain no evidence that consumers have a privacy interest in calls to collect private debt but not calls to collect government issued or backed debt.  Indeed, the effect on consumers is the same: they receive a call they claim is unwelcome and unconsented-to.  The differential treatment is therefore nothing more than naked discrimination based on the content of speech, which cannot survive strict scrutiny.  *See Entm't Merchs.*, 546 U.S. at 802 (holding that the fact that a restriction on speech is "wildly underinclusive . . . is alone enough to defeat it.").  As the Fourth Circuit recently held, "[b]ecause of the expansive reach of the debt-collection exemption, it is woefully underinclusive and does not serve the compelling government interest of protecting privacy in a narrow fashion." *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127

at *19.

Likewise, the TCPA is also fatally over-inclusive. Specifically, the statute broadly restricts private uses of automated telephone dialing systems to disseminate commercial messages to consumers, such as promotional offers and bill payment reminders, while exempting government-backed debt collection calls. There is no evidence in the legislative record that these content-based restrictions are the least restrictive means of achieving any privacy interest that may exist. Indeed, there are a multitude of less restrictive alternatives that would allow the government to limit the alleged intrusiveness, while at the same time achieving any purported privacy interest. *See Cahaly v. Larosa*, 769 F.3d 399, 405-06 (4th Cir. 2015) (invalidating state law analog to the TCPA and enumerating less restrictive alternatives, including do-not-call lists, time-of-day limitations, and mandatory disclosure of the caller's identity); *see also Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 (E.D. Ark. 2016) (invalidating Arkansas state law analog to the TCPA and enumerating less restrictive alternatives, including time-of-day restrictions, disconnection requirements, and prohibiting calls to emergency lines).

In addition, this Court can avoid over-inclusiveness by interpreting the TCPA as written. As the legislative history makes clear, the TCPA was enacted to address one specific type of telemarking practice – calls made with "autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez*, 629 Fed. App'x. at 372. Thus, interpreting the definition of ATDS as requiring random or sequential number generation avoids overbreadth and narrowly tailors the statute to address the Congressional concerns that animated the statute.

    **4.** **Alternatively, The TCPA Is Not Narrowly Tailored Because It Treats Healthcare-Related Calls More Favorably Than Collection And Servicing Calls.**

Even if the government had *some* privacy interest in regulating collection and servicing

9

calls, it cannot justify treating them less favorably than healthcare-related calls. As discussed above, the FCC created a set of seven specific requirements that unconsented-to healthcare-related calls must meet to avoid liability, but did not extend the same exemption to servicing and collection calls. *See* 30 FCC Rcd. at 8030 ¶¶ 146-47. To survive strict scrutiny, however, the differential treatment between healthcare-related calls and collection and servicing calls must be narrowly tailored. This content-based discrimination fails that test. *See Town of Gilbert*, 135 S. Ct. at 2231.

The intrusiveness of both categories of calls is the same—consumers receive a call on their cell phone that they did not consent to receive. The purpose of the calls is also the same—to convey important information to the consumer. Because the intrusiveness and the purpose are the same for both types of calls, the same rules designed to minimize the intrusiveness of healthcare-related calls while permitting the conveyance of important information must be applied equally to servicing and collection calls rather than the blanket prohibition currently in force. The differential treatment between the two categories of calls is therefore not "narrowly tailored" and, as a result, fails strict scrutiny.

**C.     The TCPA Violates The Equal Protection Clause.**

The Supreme Court has long recognized that equal protection "is closely intertwined with First Amendment interests." *Police Dep't of City of Chicago v. Mosely*, 408 U.S. 92, 95 (1972). "The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Id.* at 101.

Here, Plaintiff cannot demonstrate that the TCPA's differential treatment of various types of speech—both based on content and its speaker—satisfies equal protection. For the reasons set forth in Section II.B above, the restrictions are not narrowly tailored to their intended interests. No conceivable public interest justifies treating speech regarding things such as

economics, politics or religion less favorably than speech regarding collection of government-backed debt. Accordingly, the TCPA fails equal protection.

### D.     The TCPA Is Unconstitutionally Vague.

The TCPA is also unconstitutionally vague.  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The Constitution requires that statutes be set forth with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  This definiteness is required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Grayned*, 408 U.S. at 108.  Moreover, exacting precision is required for restrictions on free speech in order to avoid the risk of otherwise chilling constitutionally protected speech.  *See NAACP v. Button*, 371 U.S. 415, 432-33 (1963) ("standards of permissible statutory vagueness are strict in the area of free expression. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997) (explaining that the vagueness of a "content-based regulation of speech . . . raises special First Amendment concerns because of its obvious chilling effect on free speech."); *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) ("[t]he vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual [First Amendment] freedoms affirmatively protected by the Constitution.").

Even in a facial vagueness challenge, a statute need not be vague in all applications to be void if it reaches a "substantial amount of constitutionally protected conduct." *Kolender*, 461 U.S. at 359, n. 8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1992)).  The need for definiteness is heightened when affecting constitutionally

protected rights as opposed to mere economic behavior. *Village of Hoffman Estates*, 455 U.S. at 498; *see also Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 805 (M.D. La. 2004) ("[B]ecause the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague.").[1]

The ATDS restrictions imposed by the TCPA are unconstitutionally vague because they fail to give a person of ordinary intelligence adequate notice of what constitutes an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

As written, the statute covers only dialers that call randomly or sequentially, and some courts have so held. *Dominguez v. Yahoo, Inc.*, 894 F. 3d 116, 121 (3d Cir. 2018). Problematically, however, other courts have adopted different functionalities, some—such as *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018)—by re-writing the statute to cover all dialers that call "automatically" (another undefined term) from "stored" numbers and others—such as *Reyes v. BCA Financial Services, Inc.*, 312 F. Supp. 3d 1308, 1320 (S.D. Fla. 2018) —by grafting the FCC's vague rulings from 2003 onto the statutory language.[2]

Not only do courts not agree on what an ATDS must do—and thus callers cannot determine what functionalities their dialers must avoid—but the contours of the necessary "capacity" to perform those functions is not defined in the statute. In 2015, the FCC drastically

---

[1] In *Accounting Outsourcing,* LLC, the Middle District of Louisiana rejected constitutional challenges to the TCPA. The rationale in *Accounting Outsourcing*, however has no application because the court was considering fax-related restrictions that are not at issue here. Further, the court did not consider the equal protection challenge.

[2] And here matters are doubly confusing as courts cannot agree on whether or not these earlier FCC rulings survived the D.C. Circuit Court of Appeals ruling in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

broadened the definition of an ATDS to include not only equipment that has the "present ability" to automatically dial, but also the "potential" or "future capacity" to do so. FCC Order, 30 FCC Rcd. at 7971-72, 7974-76, 8089 ¶¶ 10, 16, 19.

However, in March 2018, the D.C. Circuit unanimously set aside the FCC's broad ATDS interpretation. *ACA International*, 885 F.3d at 700-01. The D.C. Circuit concluded that the FCC's ATDS interpretation was an "unreasonably expansive interpretation of the statute" and criticized the FCC's 2015 Order for failing to provide meaningful, reasoned guidance as to the meaning of "using a random or sequential number generator." *Id.* at 701. The Court also noted that the FCC had failed to clarify "whether a device must itself have the ability to generate random or sequential telephone numbers to be dialed" or whether it is "enough if the device can call from a database of telephone numbers generated elsewhere[.]" *Id.*

Further, the D.C. Circuit made clear that the FCC must provide guidance to parties who are "left in a significant fog of uncertainty about how to determine if a device is an ATDS." *Id.* at 29.[3] Thus, the FCC issued a public notice seeking comments on a new definition of ATDS that comports with *ACA International*. *See Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-492 (May 14, 2018).

The uncertainty outlined in *ACA International* has only been compounded by the Ninth Circuit's decision in *Marks*, 904 F.3d at 1052 in which the court re-wrote the definition of an ATDS to include every dialer that has the capacity to call from a list of numbers

---

[3] Remarkably, although the D.C. Circuit Court of Appeal acknowledged the "fog of uncertainty" callers faced when interpreting TCPA regulations, it did not address First Amendment concerns.

"automatically."[4] *Id.* at 1052. The term "automatically" is vague and undefined as is the term "capacity." In contrast, the Third Circuit has held that an ATDS must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Dominguez*, 894 F. 3d at 121. Additionally, as already noted above, in district courts outside of the Third and Ninth Circuits, there are inconsistent rulings on what constitutes an ATDS. *Compare Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) (adopting the *Marks* ATDS formulation) and *Adams v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 184513 (S.D. Fla. Oct. 29, 2018) (same) *with Gadelhak v. AT&T Servs.,* 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019) (rejecting the *Marks* ATDS formulation) and *Thompson-Harbach v. Usaa Fed. Sav. Bank*, 2019 U.S. Dist. LEXIS 3687 (N.D. Iowa Jan. 9, 2019) (same).

As a result, Tampa Bay Sports cannot readily determine what type of dialing technology constitutes an ATDS under the statute and therefore what type of conduct is prohibited. Accordingly, the TCPA is unconstitutionally vague and risks chilling lawful attempts of businesses to legitimately contact consumers.

**E.     The TCPA Must Be Struck Down In Its Entirety.**

If this Court finds the TCPA unconstitutional, it must strike down the TCPA in its entirety. As mentioned above, while the Fourth Circuit found the government-debt exemption to be unconstitutional, it nonetheless determined that it could sever the offending provision rather than invalidate the entire TCPA. *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127 at *28-31. There are also Florida district court decisions that have found that the

---

[4] In response to *Marks*, the FCC reopened the comment period to allow for further comment on the meaning of ATDS. *Consumer and Government Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-1014 (Oct. 3, 2018).

government-debt exemption can be severed from the rest of the TCPA.  *See, e.g., Sliwa v. Bright House Networks, LLC*, 2018 U.S. Dist. LEXIS 52509, at *13 (M.D. Fla. Mar. 29, 2018); *Wijesinha v. Bluegreen Vacations, Unlimited, Inc.*, 2019 U.S. Dist. LEXIS 57136, at *11 (S.D. Fla. Apr. 3, 2019); *Schaevitz v. Braman Hyundai, Inc.*, 2019 U.S. Dist. LEXIS 48906, at *25 (S.D. Fla. Mar. 25, 2019).  Respectfully, these decisions are wrongly decided.

These decisions ignore the fact that First Amendment free speech cases are different from cases involving other constitutional challenges.  For example, to support the severance remedy in *American Association of Political Consultants,* the Fourth Circuit relied on the Supreme Court's decision in *NFIB v. Sebelius,* 567 U.S. 519, 587 (2012) in which the Court severed an unconstitutional provision from the Affordable Care Act.  *NFIB* had nothing to do with First Amendment free speech.  However, in First Amendment free speech cases, unlike cases involving other constitutional challenges, courts will not sever a statute if "[e]liminating the offending exception would mean that we would be requiring the State to restrict *more* speech than it currently does." *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (emphasis in original).

Indeed, on a number of occasions, when the Supreme Court has found content-based exemptions to be unconstitutional, it has remedied the violation by invalidating the entire ordinance or statute, not just severing the offending exemption.  *See, e.g., Mosley*, 408 U.S. at 102 (invalidating ordinance prohibiting picketing outside schools, not just exemption for labor picketing); *Carey*, 447 U.S. at 471 (same with respect to picketing outside residences); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) (invalidating application of a state's general sales tax to magazines, not just the content-based tax exemptions for religious, trade, professional, and sports magazines).

15

Even if a statute has a general severance provision (which the TCPA has) and even if the statute could function independently without the offending exemption, as the Third Circuit recognized, the severability inquiry has a constitutional dimension that cannot be ignored. *Rappa*, 18 F.3d at 1072-73.  "In *Mosley*, without even commenting on the possibility of eliminating the exception for peaceful labor picketing, the Supreme Court struck down a statute banning picketing near a school rather than striking down the exception." *Id.* at 1073.  The *Rappa* court likewise refused to "strike down the exception in part because of the special status of speech in our constitutional scheme, a scheme which generally favors more speech." *Id.*  In addition, the Third Circuit found that "if courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentive to challenge such statutes, because those whose speech is banned would often not benefit from the remedy." *Id.  See also Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018).  Thus, recognizing the special status of speech in the constitutional framework and the importance of incentivizing parties like Tampa Bay Sports to challenge unconstitutional statutes, the entire TCPA must be struck down.

Finally, because the definition of ATDS is unconstitutionally vague, severance is not an option.  "Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)  (citing *Hill v. Wallace*, 259 U.S. 44, 70-72 (1922) (Future Trading Act held nonseverable because valid and invalid provisions so intertwined that the Court would have to rewrite the law to allow it to stand)).  Here, the definition of ATDS is so intertwined with the rest of the TCPA that the statute could not function if the definition of ATDS were severed.  Accordingly, severance is not an option, and the entire TCPA must be stricken as unconstitutional.  *See Georgia Ass'n of Educators v. Harris*, 749 F. Supp. 1110, 1117-18 (N.D. Ga. 1990) (Because the offending section was "inextricably woven into the whole [statute],"

the court rejected severance and struck the entire statute as unconstitutional.)

## III.
## CONCLUSION

The TCPA is an unconstitutional, content-based restriction on speech that cannot survive strict scrutiny. Furthermore, the TCPA fails equal protection and is unconstitutionally vague. Because Plaintiff's sole claims for relief are for alleged TCPA violations, the Complaint must be dismissed.

DATED:  April 29, 2019               Respectfully submitted,


                                     s/ *Dennis P. Waggoner*
                                     Dennis P. Waggoner (Fla. Bar No. 509426)
                                     dennis.waggoner@hwhlaw.com
                                     julie.mcdaniel@hwhlaw.com
                                     HILL, WARD & HENDERSON, P.A.
                                     101 E. Kennedy Blvd., Suite 3700
                                     Tampa, FL 33602
                                     Tel: (813) 221-3900
                                     Fax: (813) 221-2900

                                     Emily L. Wallerstein (*pro hac vice* pending)
                                     SQUIRE PATTON BOGGS (US) LLP
                                     555 South Flower Street, 31st Floor
                                     Los Angeles, CA  90071
                                     Tel: (213) 624-2500
                                     Emily.wallerstein@squirepb.com

                                     Daniel Delnero (*pro hac vice* pending)
                                     SQUIRE PATTON BOGGS (US) LLP
                                     1230 Peachtree Street, NE
                                     Suite 1700
                                     Atlanta, GA  30309
                                     Tel:  (678) 272-3200
                                     Daniel.delnero@squirepb.com

                                     *Attorneys for Tampa Bay Sports and Entertainment LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 29, 2019, I served a copy of this Motion to Dismiss on the Attorney General of the United States, via certified mail to the United States Attorney for the Middle District of Florida at 400 North Tampa Street, Suite 3200, Tampa, FL 33602.

*Dennis P. Waggoner*
Attorney