UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRYAN HANLEY, *an individual on behalf of himself and all others similarly situated*,

    Plaintiff,

v.

TAMPA BAY SPORTS AND ENTERTAINMENT LLC, *a Delaware limited liability company*,

    Defendant.

CASE NO. 8:19-CV-00550-CEH-CPT

**PLAINTIFF'S MOTION FOR FINAL
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiff Bryan Hanley, on behalf of the Settlement Class, moves for final approval of the Settlement Agreement with Defendant Tampa Bay Sports and Entertainment LLC ("Defendant" or "TBSE") and for entry of a Final Order and Judgment. The Court preliminarily approved the Settlement on January 7, 2020. ECF No. 82.[1]

The Settlement creates a $2,250,000 Settlement Fund that will be used to satisfy the claims of approximately 181,000 Settlement Class Members. Further, as a direct result of this lawsuit, TBSE has halted its text messaging marketing program and vowed to bring its practices into compliance before reinstituting them.

In granting preliminary approval, the Court found that the Settlement was within the range of reasonableness and that the Settlement Class should be given notice. (ECF No. 82 at 2). Nothing

---

[1] Unless otherwise noted, all capitalized terms have the same meaning as ascribed to them in the Settlement Agreement. *See* ECF No. 78-1.

has changed to alter this finding. To the contrary, the notice and claims program is underway, and the Settlement Class is being fully informed of its rights under the Settlement Agreement in a manner consistent with Federal Rule of Civil Procedure 23 and due process. Thus, for the reasons set forth herein as well as those in the Plaintiffs' forthcoming Motion for Attorneys' Fees, Costs, and Class Representative's Service Award, Plaintiff respectfully requests that this Court finally approve the Settlement Agreement, certify the Settlement Class, declare the terms of the Settlement to be fair, reasonable, and adequate, and that it enter a Final Order and Judgment.

## I.     INTRODUCTION

The compromise of complex class action litigation is encouraged by the courts and favored by public policy, especially where, as here, there is significant value to affected class members. *See Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 WL 5653402, *3 (M.D. Fla. Oct. 15, 2013) ("The Court recognizes that a strong policy and presumption in favor of class action settlements exists and that the Court must not substitute its business judgment for that of the parties.") (internal citations omitted); 4 Newberg on Class Actions § 11:41 (4th ed.).

The cornerstone of the Agreement here is the $2,250,000 Settlement Fund, which will be used to pay Approved Claims filed by Settlement Class Members after deducting court-approved costs of notice, administration, service awards and reasonable attorneys' fees. The Settlement further requires TBSE to institute telephone marketing compliance training for key marketing managers who oversee the TBSE's text marketing program, thereby helping to prevent any future violations from occurring going forward. This relief is immediate, substantial, concrete and equitable.

Absent a settlement, the resolution of this litigation through the trial process would likely have entailed many more years of protracted adversary litigation and appeals, which would have

substantially delayed relief to Settlement Class Members. Moreover, the Settlement avoids incremental litigation of these claims on an individual basis. Considering both the extensive monetary and non-monetary benefits under the Settlement, the Court should determine that it is fair, reasonable and merits final approval.

## II. HISTORY OF THE LITIGATION

The record demonstrates that the Parties pursued their opposing positions comprehensively and zealously. The Plaintiff instituted this Action by filing a Class Action Complaint in the United States District Court for the Middle District of Florida on March 5, 2019. ECF No. 1. The material allegations of the Complaint centered on TBSE's allegedly unlawful transmission of advertising text messages via an automatic telephone dialing system without first obtaining the recipients' prior express written consent. *Id*. ¶¶ 1-2. Specifically, the Complaint asserted that Defendant implemented unfair practices whereby it used promotional literature advertising the prospect of free giveaways to obtain consumers' telephone numbers and entice them into a recurring text telemarketing campaign. *Id*. ¶¶ 19-49.

In response to the Complaint, on April 29, 2019, Defendant simultaneously filed three motions: (1) TBSE's Motion to Stay Proceedings, (2) TBSE's Motion to Dismiss, and (3) TBSE's Motion to Strike Class Allegations. ECF Nos. 14, 15, 17. Plaintiff opposed what he considered Defendant's effort to obtain an indefinite stay. ECF No. 23. Before Plaintiff could respond to Defendant's Motions to Dismiss and to Strike the Class Allegations, Defendant also filed a Motion for Stay of Discovery and, alternatively, for Phased Discovery. ECF Nos. 23, 25. Ultimately, Plaintiff responded to all of Defendant's aforementioned motions. ECF Nos. 27-28, 39. And shortly thereafter, on June 3, 2019, Plaintiff moved to certify this action as a class action under

Federal Rule of Civil Procedure 23 and to appoint his counsel, the law firm CAREY RODRIGUEZ MILIAN GONYA LLP, as class counsel. ECF No. 29.

On June 25, 2019, this Court ordered the Parties to appear before the Court on July 10, 2019 for a Preliminary Pretrial Conference and to hear argument on Defendant's Motions to Stay Proceedings and to Stay Discovery and for Phased Discovery. ECF Nos. 40-41.

Before the Parties appeared for the hearing, the United States acknowledged the basis for Defendant's Motion to Dismiss: that the federal statute that Plaintiff was suing under, the TCPA, was alleged to be unconstitutional. ECF No. 42. According to TBSE, the TCPA is unconstitutional because it discriminates on the basis of speech contents by exempting various agents of the U.S. government from its provisions and because there is no compelling government interest in policing the types of communications typically sent through text messages.[2] In addition, TBSE asserted it could not readily determine what dialing equipment would fall within the TCPA's prohibition against use of an automatic telephone dialing system, thus making the law void for vagueness. In light of TBSE's arguments, the United States asked for additional time to intervene to support the statute's constitutionality. When the United States did intervene, it argued in support of the TCPA's constitutionality, noting that Congress made extensive findings about the law's purpose of protecting consumer privacy, an interest it asserted the United States Supreme Court considered compelling. Also, before the Parties were due to appear before the Court, Defendant responded to Plaintiff's motion for class certification with a 30-page opposition brief containing 10,000 pages of materials and 17 exhibits, including an expert report. ECF No. 48. The Plaintiff immediately sought leave to submit a reply in further support of his motion for class certification. ECF No. 49.

---

[2] On January 10, 2020, the Supreme Court granted certiorari in *Barr v. Political Consultants,*, No. 19-631, 2020 WL 113070 (2020) to address the TCPA's constitutionality. The Settlement, of course, avoids the necessary stays and further uncertainty that attend the Supreme Court's review of the TCPA.

On July 10, 2019, the Parties appeared before the Court for a Preliminary Trial Conference. The Court ordered the Parties to confer further and to submit an amended Case Management Report. *See* ECF No. 50.  Arguments were also held on Defendant's Motion to Stay Proceedings and to Stay and Phased Discovery. Both of Defendant's motions were denied and the Plaintiff's request to submit a reply in support of his motion for class certification was granted. *See* ECF Nos. 50, 51.

Through the reply, Plaintiff addressed Defendant's positions and proposed an amended class definition that addressed some of Defendant's objections to class certification. ECF No. 55. Thereafter, Defendant sought leave to file a sur-reply to Plaintiff's motion for class certification, which the Court granted. ECF Nos. 57, 60. In the sur-reply, Defendant argued that Plaintiff prejudicially moved the goalpost by changing his proposed class definition in his reply brief. ECF No. 62. Plaintiff then sought and obtained leave for the submission of a sur-sur-reply on class certification issues and presented additional reasons why he believed class certification was appropriate. ECF Nos. 67-68, 70.

During this time, the Parties were not only busy briefing the constitutionality of the TCPA and whether this action was properly litigated as a class action, but were also engaged in direct communications, and as part of their obligations under Rule 26, discussing the prospect of resolution.  Those discussions eventually led to an agreement between the Parties to engage in formal mediation, which the Parties agreed would take place before Jay Cohen, a neutral with substantial experience mediating consumer class actions, including class actions alleging violation of the TCPA. *See* ECF No. 58. While the mediation efforts were ultimately unsuccessful, they set the stage for continued  in-depth discussions for settlement. ECF No. 74.

After mediation, the Plaintiff sought leave to submit an Amended Class Action Complaint that added several of Defendant's corporate affiliates and employees who were alleged to have been directly involved in the supposedly offending behavior. ECF Nos. 72, 72-1. In addition, Plaintiff's proposed Amended Class Action Complaint sought to allege claims for intrusion upon seclusion and to obtain civil remedies for violations of criminal wiretap laws. Shortly thereafter, the Plaintiff also moved to compel Defendant to produce additional documents in response to his First Set of Requests for Production. ECF No. 73.

During this time, counsel for the Parties continued settlement negotiations that began at the September 23, 2019 mediation in Tampa. Following counsels' multiple telephone conferences, email exchanges and redline drafts, on October 14, 2019, the Parties signed the Binding Settlement Term Sheet that set forth the roadmap to concluding this litigation for all Parties and in a fashion that provides meaningful relief to all absent class members. *See* ECF No. 76 (informing Court of the Binding Settlement Term Sheet). Thereafter, Plaintiff submitted the Settlement Agreement to the Court and moved for preliminary approval thereof, which was granted on January. 7, 2020. *See* ECF Nos. 78, 82.

TBSE has and continues to deny that it committed any wrongdoing or that it threatened or attempted to commit, any wrongful act or violation of law or duty as alleged in the Action and has vowed to both defend this Action and to oppose certification of a litigation class. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, TBSE has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement. Plaintiff believes that the claims asserted in the Action against TBSE have merit and that he would have prevailed at summary judgment and/or trial. Nonetheless, Plaintiff and Class Counsel recognize that TBSE

raised factual and legal defenses that present a risk that Plaintiff may not prevail. Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against TBSE through class certification, summary judgment, trial, and any subsequent appeals. Plaintiff and Class Counsel have also taken into account the uncertain outcome and risks of litigation, especially in complex class actions such as this, as well as the difficulties inherent in such litigation. Therefore, Plaintiff believes it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice. Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Settlement Agreement.

### III. THE NOTICE PROVIDED TO THE CLASS MEMBERS CONFORMS WITH BEST PRACTICES

To satisfy Rule 23, notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 Fed. Appx. 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314 (11th Cir. 2009) ("Notice must be 'reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them the opportunity to present their objections.'") (*abrog. on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)),

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations and citation omitted). Moreover, neither Rule 23 nor due process requires that class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012); *see also* PRINCIPLES OF

7

THE LAW OF AGGREGATE LITIGATION § 3.04, cmt. a ("In many cases, personal notice may not make economic sense.").

The notice plan approved by the Court here constitutes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In approving the notice plan, the Court found:

> The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

(ECF No. 82 at ¶ 12).

As of the filing of this Motion, Angeion Group, the Court approved Settlement Administrator, continues to work diligently to implement and execute the Court's Notice plan. It sent direct notice to each Settlement Class Member for which it obtained a valid email or postal mailing address. Decl. of Steven J. Giannotti at [¶¶ 6-9, attached as **Exhibit 1**. The direct notice summarized the claim, explained the amount of the Settlement and how claim amounts would be calculated, stated that incentive awards and fees would be sought, provided a toll-free number for questions, and directed Settlement Class Members to the Settlement website. *Id.* at Exs. B-C. The website enables Settlement Class Members to scrutinize the Settlement Agreement, its exhibits, the Court's preliminary approval order, the long form notice, and to file a claim or request that a claim form be mailed to them. *See* TBSEtextmessagesettlement.com; *see also* Decl. Giannotti at ¶¶ 12-13. The website also provides the toll-free number to reach Class Counsel and obtain additional information. *Id*. Finally, although direct-mail notice alone is sufficient to satisfy Rule

23 and due process, Angeion Group has also published notice in the Tampa Bay Times print and digital sections, which are scheduled to run for four consecutive weeks. Decl. Giannotti at ¶¶ 10-11.

In short, the notice program complies with the court approved plan, surpasses both Rule 23 and due process mandates, and will fully apprise the Settlement Class Members of the material terms of the Settlement and their rights thereunder.

### IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."), *aff'd*, 893 F. 2d 347 (11th Cir. 1989). With a settlement, class members are ensured an immediate benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining this, deference should be given to the decision of the parties. *See Warren*, 693 F. Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (citation omitted). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

9

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F. 2d at 986.

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here, as the Settlement Agreement is the result of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, satisfies each of the *Bennett* factors, and leads to immediate injunctive and monetary relief.

### a. The Settlement Agreement is the Result of Arm's Length Negotiations.

This case was anything but a "file and settle case." *See David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. 2010). The context in which the Settlement Agreement was reached confirms it was the product of arm's length and informed negotiations between adverse parties. The Settlement Agreement was only reached after, *inter alia*, extensively briefing, attending hearings, and obtaining rulings on Defendant's numerous motions to stay. In addition, Plaintiff's motion for class certification was fully briefed with both parties submitting extensive supplemental reply, sur-reply, and sur-sur-reply briefs and bolstered by 10,000 pages of documents, declarations and an expert report. Indeed, Defendant waged a full out attack on the TCPA's Constitutionality–for which the Department of Justice deemed it necessary to intervene to defend its constitutionality–and which was also fully briefed.

The Settlement was further informed by Plaintiff's widespread pre-suit evidence gathering, extensive negotiations, a full day mediation session before a highly qualified neutral mediator, and

confirmatory discovery through the deposition taken from TBSE's Rule 30(b)(6) representative regarding the size and scope of the Settlement Class. These extensive efforts provided Class Counsel with sufficient information about the value of the case, including Settlement Class size, their ultimate chance of success, and enabled them to evaluate the terms of any proposed agreement to ensure a fair compromise.

In particular, the fact that a Settlement was reached only after a full day in-person mediation session with an experienced neutral and continuing negotiations over an additional two-week period demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator).

This Settlement is the result of arms' length and informed negotiations and it should be finally approved.

### b. The Settlement Agreement Satisfies all the *Bennett* Factors.

In addition to being the product of arm's length negotiations, the Settlement Agreement meets each of the Eleventh Circuit's *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.*; *see also Warren*, 693 F. Supp. At 1055 (record showed no evidence of collusion, but to the contrary showed "that the parties conducted

discovery and negotiated the terms of settlement for an extended period of time"). Here, each factor weighs in favor of granting final approval.

### 1. *Likelihood of Success on the Merits*.

First, "[t]he likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). Where success at trial is uncertain, this factor weights in favor of approving the settlement. *See Newman v. Sun Capital, Inc.*, No. 2:09-cv-445-FtM-29SPC, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012).

The Plaintiff's chance of success at trial here is balanced numerous realistic risks, including that the TCPA may be found to be unconstitutional by the United States Supreme Court. *See AAPC v. F.C.C.*, 923 F. 3d 159 (4th Cir. 2019) (declaring "government exemption" unconstitutional and severing same from statute), *cert. granted* in *Barr v. Political Consultants, et al.*, No. 19-631, 2020 WL 113070 (Jan. 10, 2020). In addition, there was a risk that Plaintiff may not succeed in demonstrating that Defendant utilized an ATDS which would have been dispositive of the case. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F. 3d 1301 (11th Cir. 2020). Additionally, Defendant might have successfully proven its likely forthcoming affirmative defense of prior express written consent, which could have handed a deathly blow to Plaintiff's claims. *See, e.g., Winner v. Kohl's Department Stores, Inc.*, No. 16-1541, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) (dismissing TCPA claims on basis of consent defense).

Plus, there is no guarantee the Court would certify the class given that certification was hotly contested. *See United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-cv-3072-T-17TBM, 2017 WL 9398654, *9 (M.D. Fla. May 2, 2017) ("Where a substantial question exists regarding the likelihood of success at trial, this factor weights in favor of approving a proposed

class action settlement."). Finally, even if Plaintiff were to succeed at trial in all regards, Defendants would surely have sought appellate review.

Against these significant hurdles and uncertainties, the Settlement guarantees immediate substantial cash and injunctive relief. *See Gevaerts v. TD Bank*, No. 11:14-cv-29744-RLR, 2015 WL 6751061, at *13 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit"). When the strengths of Plaintiff's claims are weighed against the legal and factual obstacles the Settlement Class faces, the complexity of class action practice, there is no doubt that the Settlement is in the Settlement Class' best interest.

### 2. Range of Possible Recovery and Point where an Agreement is Fair, Reasonable, and Adequate.

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *See In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*.

First, the immediate financial relief secured for the Settlement Class is substantial. Under the Settlement, TBSE agreed to establish a $2.25 million Settlement Fund to be used to compensate Settlement Class Members. The Settlement further requires TBSE to comply with the TCPA, which it represents it has done by ceasing its text messaging program and committing not to recommence it without first implementing strict consent focused compliance protocols. *See* ECF

No. 78-1 at 17 ("TBSE represents that it has halted its text club program. TBSE agrees that, prior to starting any new text message text message club program, it will implement a training program and institute compliance protocols to ensure compliance with the [TCPA], including the use of what is commonly referred to as a 'double opt-in' procedure to ensure 'prior express written consent' is properly obtain for marketing messages.").

While the exact dollar figure that each Settlement Class Member who timely submits an Approved Claim is impossible to determine, undersigned counsel represents to the Court that in a similar action where it was appointed settlement class counsel, approximately 210,000 class members obtained a $2,500,000 settlement and payouts of $82.48 per approved claim. *See Gonzalez v. TCR Sports Broadcasting Holding, LLC, et al.*, No. 1:18-cv-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019). There is no reason to think that the per claim distribution will greatly differ here. And this sum vastly exceeds per claim figures that have been approved in other TCPA litigation. *See James v. JPMorgan Chase Bank, N.A.*, No. 8L15-cv-2424-T-23JSS, 2016 WL 6908118, *2 (M.D. Fla. Nov. 22, 2016) (approving TCPA settlement where 5% claims rate would provide approximately $50 to each person who submits a claim). Indeed, the *James* case cited opinions approving settlements providing as little as $13.75 to each class member as well as those explaining that $34.60 falls within the ranges of recoveries in a TCPA action. *See id.* (discussing *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) and *In re Capita One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015)). Furthermore, given that the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," there is no doubt as to the Settlement's adequacy. *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992).

Second, the Settlement makes relief obtainable through submission of a simple Court-approved claim form in a streamlined process through which Settlement Class Members have a far lesser burden and standard of proof than would be required in any court proceeding. Unlike the rigors of a federal court trial, this claims process is not subject to the myriad of requirements otherwise imposed by the Federal Rules of Civil Procedure or Evidence. Indeed, the agreed claims process exists to satisfy the claims of any and all Settlement Class Members who simply submit a qualifying claim, which is straightforward and easy to do.

Class Counsel reasonably concluded that this claims process is appropriate. The Settlement Class Members can enter information on the Settlement website and download a customized claim form and a toll-free assistance number appears in the mailed notice, the claim form, and online to facilitate claim submissions.

The result here is plainly reasonable and easily surpasses potential per class member benefits conferred in many other TCPA class action settlements that were finally approved.

### 3. *The Complexity and Expense of Further Litigation*.

The Court also looks to the complexity of the litigation and the expense of further litigation. Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381. This consideration is especially salient here as "[c]ases involving alleged violations of the TCPA by use of ATDS platforms necessarily involve complex questions of law and difficulty of proof." *Williams v.*

*Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 WL 1450090, *3 (M.D. Fla. April 2, 2019).

This factor favors approval because the expense and complexity of further litigation would be substantial and require extensive discovery, a ruling on Plaintiff's motion for class certification, briefing summary judgment, in limine and *Daubert* motions, obtaining and submitting expert reports and extensive trial preparation, trial, post-trial motion practice, and appeal. Moreover, continued litigation would delay the case's resolution, impose additional substantial expense on both sides, and consume valuable judicial resources. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F. Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Still, even if there were no risks in pressing this litigation forward, the Settlement Class Members surely would not have recovered anything if they simply pressed blindly ahead for the maximum possible recovery permitted by law. Indeed, bankruptcy is not the preferred outcome in class action practice and "[c]onsidering that complexity, the difficulty of proof, the prospect of protracted litigation, including summary judgment motions and appeals, the expense of litigating the merits, and the attendant risks Plaintiff acknowledges, a relatively early compromise was appropriate." *Williams*, 2019 WL 1450090, *3.

The Settlement reached by Class Counsel ensures that the Settlement Class will receive fair, adequate, reasonable, and meaningful relief. It is an excellent result by any measure.

    4.   <u>*Stage of Proceedings where Settlement Reached*</u>.

The settlement in this case was reached only after substantial briefing and a full day mediation session before an experienced neutral. In addition, Class Counsel reviewed 10,000 pages of documents filed in opposition to the certification of a litigation class under Rule 23 and obtained discovery to verify the total amount of Settlement Class Members and that TBSE would be able to provide their phone numbers to Angeion Group, the Class administrator.

While the parties here didn't wait until the eve of trial to settle, that's not a bad thing. To the contrary, "[e]arly settlements are favored." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014). Moreover, "vast formal discovery need not be taken." *Id.* (citing *Lipuma* at 1324).

Here, "the Settlement was achieved [relatively] early in the litigation, but not so early that Class Counsel did not have information with which to negotiate," and this factor supports approval of the Settlement Agreement. *Perez*, 501 F. Supp.2d at 1383; *see also Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443-Orl-41GJK, 2018 WL 3151673, at *10 (M.D. Fla. Apr. 12, 2018) ("While the parties reached settlement at an early stage of the proceedings, their settlement was the result of 'intensive arms-length negotiations between experienced attorneys who are familiar with class action litigation.") (citations to record omitted); *see also Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-cv-2246-T-23TGW, 2006 WL 2474062, *6 (M.D. Fla. Aug. 25, 2006). And "[w]hile the duration of the litigation is relatively short, the record demonstrates that the parties engaged … in extensive motion practice, including Plaintiff's motion for class certification and Defendant's motion[] to stay." *Williams*, 2019 WL 14500090, *3.

   5.   *Substance and Amount of Opposition to Agreement.*

As of yet, there have been no objections to the Settlement Agreement. *See* Decl. Giannotti at ¶¶ 16-17 (no exclusions or opt outs have been received); *see also Grant v. Ocwen Loan*

*Servicing, LLC*, No. 3:15-cv-01376-J-34-PDB, 2019 WL 367648, *8 (M.D. Fla. Jan. 30, 2019) ("The low opt-out and objection rates weigh in favor of granting final approval to the Settlement."). Admittedly, it is early in the claims process and Class Counsel will inform the Court of any opposition and the basis therefor before the Final Fairness Hearing. That said, 5,867 Claim Forms have already been received, indicating substantial support by Settlement Class Members. Further, the claims process will remain open until June 8, 2020, thus leaving ample time for any desiring Settlement Class Members to submit Claim Forms. *See* Decl. Giannotti at ¶ 15; *see also* ECF No. 82 at 12 (setting June 8, 2020 claim submission deadline).

### V. CONCLUSION

In summary, the Settlement yields a great result to the Settlement Class, provides instant cash benefits, as well as meaningful injunctive relief. In addition, the Settlement is the product of extensive fact-seeking by the Plaintiff, contentious litigation and arms' length negotiations before two experienced mediators. The Settlement satisfies all the *Bennett* factors. The Court already ruled that the Settlement is within the range of reasonableness and nothing has changed to disturb that conclusion. The Plaintiff requests an order conclusively approving the Settlement and, as more fully set forth in Plaintiff's forthcoming Class Counsel's Motion for Attorneys' Fees, Costs, and Class Representative's Service Award, awarding the Plaintiff a $10,000 incentive award, awarding Class Counsel $787,500.00 for reasonable attorneys' fees and $21,827.47 in necessary and reasonable costs and expenses actually incurred in the litigation.

<u>February 24, 2020</u>                                     Respectfully submitted,

                                                                                          CAREY RODRIGUEZ
MILIAN GONYA LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:  (305) 372-7474
Facsimile:   (305) 372-7475

*By: /s/ Ruben Conitzer*
Ruben Conitzer (Fla. Bar No. 100907)
rconitzer@careyrodriguez.com
cperez@careyrodriguez.com
David P. Milian (Fla. Bar No. 844421)
dmilian@careyrodriguez.com
ecf@careyrodriguez.com