**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| BRYAN HANLEY, *an individual on behalf of himself and all others similarly situated*,<br><br>        Plaintiff,<br><br>v.<br><br>TAMPA BAY SPORTS AND ENTERTAINMENT LLC, *a Delaware limited liability company*,<br><br>        Defendant. | CASE NO. 8:19-CV-00550-CEH-CPT |

**FINAL APPROVAL ORDER AND JUDGMENT**

This cause came before the Court on Plaintiff Bryan Hanley's ("Plaintiff") Motion for Final Approval of Class Action Settlement (Doc. No. 84) and Motion for Attorneys' Fees, Costs, and Service Award (Doc. Nos. 85, 87) (collectively, the "Motions"). The Court has reviewed the Motions and the record and has heard oral argument at the final fairness hearing held on April 7, 2020. No objections have been submitted to the proposed settlement and none were presented at the final fairness hearing. The Motions are due to be GRANTED, and final judgment will be entered.

**I.    BACKGROUND**

This action concerns the allegations set forth in Plaintiff's Class Action Complaint, which alleged that Defendant Tampa Bay Sports and Entertainment, LLC ("TBSE" or "Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by sending marketing text messages to consumers using an automatic telephone dialing system ("ATDS"). Specifically, Plaintiff claimed that TBSE promised him the chance to win free hockey tickets by

texting a keyword to a five-digit short code telephone number but then began to regularly send automated marketing text messages to his cell phone. The Plaintiff claimed that both he and others experienced similar conduct and that this violated the TCPA. Defendant denied the factual allegations in the case and vehemently denied violating the TCPA with respect to any conduct directed at Plaintiff or the class members.

The parties proceeded to litigate this case, which included discovery, motions to dismiss, motions to strike the Plaintiff's class allegations, and the Plaintiff's motion for class certification.

After attending mediation, the parties informed the Court that they entered into a Settlement Agreement. After the Settlement Agreement was preliminarily approved and notice sent to the Settlement Class Members, a final fairness hearing was held on April 7, 2020. Over 25,000 claims have been submitted. No objections to the Settlement Agreement were submitted or raised at the final fairness hearing.

## II. DISCUSSION

### a. Class Certification

Rule 23, Federal Rules of Civil Procedure, governs the requirements and procedures for class actions in federal court. There are four prerequisites to a district court's certification of a class under Rule 23, including "numerosity, commonality, typicality, and adequacy of representation" of the class, and those prerequisites "are designed to effectively limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (internal quotations and citations omitted); Fed. R. Civ. P. 23(a)(1)-(4). Numerosity is generally satisfied when there are more than forty putative class members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Commonality is satisfied when there is "at least one issue whose resolution will affect all

or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Typicality is satisfied where there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Adequacy of representation is satisfied when "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation," and when "plaintiffs [do not] have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to all class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Carter v. Forjas Taurus, S.A.*, 701 F. App'x. 759, 765 (11th Cir. 2017) (per curiam). Importantly, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Court finally certifies Plaintiff's putative class because the purported class meets all of the Rule 23(a) prerequisites and satisfies Rule 23(b)(3). Where, as here, parties reach a class action settlement agreement before the putative class is certified, a court must examine whether the putative class meets the prerequisites of Rule 23(a) and at least one of the types of classes under Rule 23(b). The Court already preliminarily approved the following settlement class in this case:

> All Persons who are users of or subscribers to cell phone numbers that, after a keyword was texted to shortcode telephone number 61873, were sent at least one SMS text message in connection with the Bolts Text Club through the Phizzle text message dialing platform. (ECF No. 82).

The Court also preliminarily found that certification for purposes of settlement is proper because the putative class met all of the Rule 23(a) prerequisites and met the Rule 23(b)(3) requirement that a class action is the superior means of resolving this action. *Id*. Consistent with the Court's preliminary class certification, the Court finally certifies the Settlement Class. First, the putative class satisfies the numerosity requirement as there are 182,176 individuals in the class. *See* Decl. of Steven J. Giannotti (Doc. No. 84-1, ¶ 5). Second, commonality is satisfied because the common issue of fact as to all class members is whether they received a non-emergency text message using an ATDS from TBSE. This common factual question leads to common legal questions, such as whether the common facts constitute a violation of the TCPA. Third, typicality is satisfied because Plaintiff and the Settlement Class Members all allegedly received some non-emergency text messages using an ATDS from TBSE, and the relief that Plaintiff and Settlement Class Members would be entitled to consist of statutory damages and are nearly identical. Fourth, adequacy of representation is satisfied because Plaintiff's counsel has demonstrated that it is capable of handling complex litigation, including class action lawsuits, and because Plaintiff has no interests that are in conflict with the rest of the class. Finally, the Court finds that Rule 23(b)(3) is satisfied because the foregoing common questions of fact and law and the large number of putative class members demonstrate that a class action is a superior way to vindicate the rights of all putative class members than if each member were to litigate their individual TCPA claims. Accordingly, the Settlement Class is certified for the purposes of settlement.

    b. **Final Approval of Settlement Agreement**

        i. *Notice to Settlement Class Members*

Specifically, "Rule 23(e) ... requires that a settlement or compromise of a class action be approved by the district court." *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984). Rule 23(e) lays out the procedures that a district court must follow before approving a class action settlement. Fed. R. Civ. P. 23(e). First, the court must ensure that "notice [is given] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Class members must be "given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action." *Fought v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). In an action certified under Rule 23(b)(3), "class members should receive 'the best notice that is practicable under the circumstances.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)). A claim process that involves "completing a one-page form and submitting it either online or by mail" is not "particularly difficult or burdensome." *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (per curiam).

After the class was certified for the purpose of settlement, the Settlement Administrator reviewed data files containing 182,176 unique affected phone numbers. *See* Decl. of Steven J. Giannotti (Doc. No. 84-1, ¶ 5). Of the Settlement Class Members, the Settlement Administrator identified 168,875 records of potential members of the Settlement Class that had a mailing address and mailed notice of the settlement to each of them. *Id.* at ¶¶ 5, 8-9. In addition, the Settlement Administrator obtained email addresses and sent notice via email to 129,379 Settlement Class Members. *Id.* at ¶¶ 5-7.

To reach more of the Settlement Class, the Settlement Administrator printed notifications in the Tampa Bay Times for four consecutive weeks and set up a settlement website to allow Settlement Class Members to submit claims electronically. *Id.* at ¶¶ 10-13. In addition, a toll-free

number was established to ensure that any frequently raised questions can be addressed. *Id.* ¶ 14. Last, the Tampa Bay news media ran a story about the Settlement, featuring it in one of its Friday night broadcasts and explaining the claims process. *See* https://www.wfla.com/8-on-your-side/tampa-bay-lightning-fans-could-receive-settlement-following-class-action-lawsuit/.

As of March 30, 2020, 25,878 Settlement Class Members filed a claim and only eight timely requested to be excluded from the class. No Settlement Class Members objected. *See* Decl. Steven J. Giannotti (Doc. No. 91 ¶¶ 4-6). The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

### ii.  *The Settlement Agreement*

Second, a "court may approve [a settlement agreement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). To finally approve a class-action settlement agreement, a court must find that:

> [T]here was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, "[d]etermining the fairness of the settlement is left to the sound discretion of the trial court and [an appellate court] will not overturn the court's decision absent a clear showing of abuse of discretion." *Id.* Generally, "the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "There exists 'an overriding public interest in favor of settlement, particularly in class

actions that have the well-deserved reputation as being the most complex.'" *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal quotations and citations omitted).

*1. No Fraud or Collusion*

First, the settlement here does not appear to be the product of collusion. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio*, 297 F.R.D. at 692. Here, the parties aggressively litigated this case and participated in a full day mediation session in front of a well-respected mediator, and only after continued settlement discussions following mediation did they reach terms on a proposed class settlement. Accordingly, the Court finds that the Settlement Agreement was the result of those discussions and arms-length negotiations and there was no fraud or collusion in arriving at the settlement.

*2. Likelihood of Success at Trial*

Plaintiff's likelihood of success at trial is not only the first *Bennett* factor, it is also 'by far the most important factor' in evaluating a class action settlement." *Figueroa*, 517 F. Supp. 2d at 1323 (citation omitted). Here, Plaintiff's likelihood of success at trial is far from certain. Plaintiff alleged that TBSE violated the TCPA when it sent him unwanted marketing messages. But whether TBSE's conduct violated the TCPA is an open question given that the technology TBSE used may or may not constitute an ATDS. In fact, a recent opinion by the Eleventh Circuit Court of Appeals has suggested a narrow interpretation of what constitutes an ATDS, thus limiting Plaintiff's ability to demonstrate that TBSE utilized such equipment. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F. 3d 1301 (11th Cir. 2020); *see also Northrup v. Innov. Health Ins. Partners, LLC*, No. 8:17-cv-1890-T-36JSS, 2020 WL 906199 (M.D. Fla. Feb. 25, 2020).

Besides the upcoming challenge in demonstrating TBSE's use of an ATDS, Plaintiff also

7

would have been required to overcome TBSE's constitutional challenge to the TCPA, survive summary judgment briefing, succeed at trial, and surely continue to advance his positions through appellate litigation.

The uncertain path to a recovery suggests that the Settlement Agreement may represent the better alternative for Plaintiff and the class versus continued litigation.

### 3. *The Point Where a Settlement is Fair, Adequate, and Reasonable*

"The second and third considerations of the *Bennett* test are easily combined. A court first determines the range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial." *Saccoccio*, 297 F.R.D. at 693 (internal quotations and citations omitted). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens*, 118 F.R.D. at 542.

Here, the Court has already found that "the Settlement is within the range of reasonableness." (Doc. No. 82 at 7). Nothing has changed to alter this finding.

### 4. *Complexity, Expense, and Duration of the Litigation*

As discussed above, the issues raised in this case are both novel and complex. The Parties represent that this was hard fought litigation, that significant time and energy has already been expended by the parties, and the record reflects this. In addition, the Parties have made it clear that regardless of which party prevailed, the opposing party would likely continue to appeal and litigate this matter given the novel issues of law presented. Thus, given the novel and complex issues

presented in this litigation, the substantial expenses already incurred by the parties, and the potential for expensive and time-consuming litigation absent a settlement, this factor weighs in favor of approving the Settlement Agreement.

### 5. *Substance and Amount of Opposition to the Settlement*

"The reaction of the class [to the settlement] is an important factor." *Saccoccio*, 297 F.R.D. at 694 (internal quotations and citations omitted). Here, there were no objections filed to the settlement agreement and only eight have timely opted out. *See* Decl. Steven J. Giannotti (Doc. No. 91 ¶¶ 4-6). Further, 25,878 claims have been submitted under the Settlement Agreement. *Id.* This lack of opposition and Settlement Class Member support weigh strongly in favor of the Court's approval of the Settlement Agreement.

### 6. *Stage at Which Settlement is Reached*

"The stage of the proceedings at which settlement is achieved is 'evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.'" *Saccoccio*, 297 F.R.D. at 694 (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." *Id.* (citations omitted).

While the parties settled relatively early in the litigation, before plaintiff's putative class was certified, both Plaintiff and TBSE had sufficient information to adequately evaluate the merits of the case and to weigh the benefits of continuing to litigate this matter. After fully briefing issues relating to the TCPA's constitutionality, class certification, and Plaintiff's review of more than 10,000 pages of discovery materials, the parties decided to quickly and amicably address the underlying and likely dispositive issues in the case. This led to an all-day mediation before a respected mediator and was followed by numerous weeks of continued settlement discussions that

finally led to a settlement in principle, and which was followed by confirmatory discovery. Accordingly, the stage at which settlement was reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement. The Court finds the Settlement Agreement to be a fair, adequate, and reasonable resolution of the class members' claims and approves the Settlement Agreement.

### III.   ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARD

#### a. Attorneys' Fees and Costs

In Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award, Plaintiff's counsel requests $787,500.00 in attorneys' fees and to recover $27,452.47 in costs and expenses. (Doc. NO. 85, 87). Because this is not a coupon settlement and the Settlement Class Members will receive direct cash distributions, the Court does not calculate reasonable attorneys' fees pursuant to the provisions of 28 U.S.C. § 1712. Instead, to determine attorneys' fees "in a case involving a class action settlement that created a reversionary common fund, [the Eleventh Circuit] held that 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Poertner*, 618 F. App'x at 628 (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774-75 (11th Cir. 1991)). "The percentage applies to the total fund created, even where the actual payout following the claims process is lower." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)); *see also Montoya v. PNC Bank, N.A.*, No. 14-20474 2016 WL 1529902, *23 (S.D. Fla. Apr. 14, 2016) ("the valuation of counsel's fee should be based on the opportunity created for the Settlement Class … [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement"); *see also Los*

*Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG, 2015 WL 11438497 (S.D. Fla. Sept. 11, 2015) (Gayles, J.) (Doc. Nos. 82, 84) (approving $2,750,000 in attorneys' fees where, at time Class Counsel moved for fees 7,599 class members had submitted claim forms for $50 each for a distribution totaling only $379,950).

When determining counsels' fees in a common fund context, "no case has held that a district court must consider only the actual payout in determining attorneys' fees." *Carter v. Forjas Taurus, S.A.*, 701 Fed. Appx. 759, 767 (11th Cir. 2017) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999)). Various federal appellate courts, on the other hand, have ruled that it is an abuse of discretion to base fee awards only on the class members' claims made rather than a percentage of the entire fund available to the class. *See Williams v. MGM-Pathe Comm's. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court for basing fee award only on claimed portion of common fund); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (same); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," *In re Sunbeam: Securities Litigation*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774), an award of one-third of the common fund is "consistent with the trend in this Circuit." *Reyes*, No. 10-20837-CIV-MGC (Doc. No. 196 at 6).

Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel). Fee awards, however, "must be determined upon the facts of each case," and the Eleventh Circuit has indicated

11

that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F. 2d at 774-75.  In this case, considering the complexity of the case, the result achieved, and the Settlement Class' favorable reaction to the Settlement, a fee award of $787,500.00, which represents a slight increase from the one-third benchmark, is reasonable.

### b. Class Counsels' Cost Award

Class Counsel seeks reimbursement of $27,452.47 in costs expended in connection with the prosecution of the case. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund cases as a matter of course. *See Flaum v. Doctor's Assoc., Inc.*, Case No. 16-61198-CIV (S.D. Fla. March 11, 2019) (Doc. No 175, slip op. at 15) (approving costs to Class Counsel); *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."). Class Counsel submitted its Declaration in support of its request, which included a line item breakdown of actual costs incurred. (Doc. No. 85-1).  Moreover, the costs and expenses equated to approximately 1.2% of the settlement fund and is considered in line with normal expenditure amounts as a percentage of the total recovery amount.  *See In re IMAX Secs. Litig.*, 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012) (listing cases approving costs and expenses totaling approximately 2% of the settlement funds); *see also James v. JPMorgan Chase Bank, N.A.*, 2017 WL 2472499, *2 (M.D. Fla. June 5, 2017) (approving recovery of mediation, travel, and other expenses incurred in connection with the matter).

Consistent with the foregoing, the Court determines that Class Counsel may recover its

actual costs incurred in the amount of $27,452.47.

### c. Class Representative Award

Plaintiff requests a $10,000 incentive payment for Plaintiff as the Class Representative. "Incentive awards are not uncommon in class action litigation ... [which] compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]he Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, [but] there is ample precedent for awarding incentive compensation to class representatives." *Id.* In *Allapattah*, the court focused on the fact that "[t]his is not a case where lawyers inappropriately recruit plaintiffs to serve as 'figureheads' for suits the lawyers themselves want to file and settle" in granting an incentive award to class representative. *Id.* at 1220.

Here, Plaintiff's counsel represents that Plaintiff: (1) provided information, including cellular telephone records and screenshots of his cellular telephone, to Class Counsel for preparing the complaint and other filings; (2) reviewed pleadings and filings; (3) communicated on a regular basis with Class Counsel to stay apprised of the progress of the litigation and settlement negotiations; and (4) reviewed and approved the Settlement Agreement. At the Final Fairness Hearing, Plaintiff's counsel also represented that this case was Plaintiff's first time as a class representative, and that Plaintiff was motivated to file suit in this case because he repeatedly received the advertisement text messages at issue in this case. The Court finds that the requested service award is reasonable and awards Plaintiff a $10,000 incentive payment as Class Representative. *See, e.g., Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (ECF No. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs.,*

*Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (Doc. No. 243) (awarding $30,000 incentive awards in TCPA class settlement); see *also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (collecting cases); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs). Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. This Final Approval Order and Judgment incorporates by reference the definitions in the Settlement Agreement (Doc. No. 78-1), and all capitalized terms used herein shall have the same meanings as set forth in the Settlement Agreement unless otherwise set forth in this Order.

2. The Court has personal jurisdiction over the Parties, all Settlement Class Members, and the claims asserted in this Action, as well as subject matter jurisdiction to approve the Settlement Agreement.

3. On January 7, 2020, the Court preliminarily approved the Settlement Agreement by entering the Order Granting Preliminary Approval of Class Action Settlement Agreement (Doc. No. 82), and notice was given to all Settlement Class Members.

4. The Court finds, pursuant to Federal Rule of Civil Procedure 23(e), that the settlement of this Action pursuant to the terms of the Settlement Agreement is, and is finally approved to be, a fair, reasonable, and adequate settlement in the best interests of the Settlement Class, in light of the factual, legal, practical, and procedural considerations raised in this Action.

5. The Settlement Agreement was entered in good faith following informed, arm's length

negotiations conducted by experienced counsel with the assistance of a well-respected mediator, and is non-collusive.

6. Certification for purposes of settlement is proper because (a) the Settlement Class is so numerous that joinder of all members is impractical; (b) there are questions of law and fact common to the Settlement Class, which predominate over any questions affecting only individual members; (c) Plaintiff's claims are typical of the claims of the Settlement Class; (d) Plaintiff and his attorneys fairly and adequately protect the interests of the Settlement Class; and (e) a class action is the superior means of resolving this Action.

7. In light of the above findings, and solely for purposes of the Settlement, the Court **CERTIFIES** this Action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). The Settlement Class is defined as:

All Persons who are users of or subscribers to cell phone numbers that, after a keyword was texted to shortcode telephone number 61873, were sent at least one SMS text message in connection with the Bolts Text Club through the Phizzle text message dialing platform.

8. The Court **APPOINTS** Plaintiff Bryan Hanley as the Class Representative of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a).

9. The Court **APPOINTS** Plaintiff's attorneys, David P. Milian and Ruben Conitzer of the law firm Carey Rodriguez Milian Gonya LLP, as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g), who it deems are suitable and competent counsel.

10. The Court finds that Class Notice provided to the Settlement Class (1) constitutes the best notice practicable under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Settlement Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes

due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

11. Notice has been provided to the appropriate state and federal officials in accordance with the requirements of the Class Action Fairness Act (28 U.S.C. § 1715).

12. No objections to the Settlement Agreement or its preliminary approval were timely received.

13. Eight individuals timely and validly requested exclusion from the Settlement Class and the Settlement Agreement, and thus they are excluded from both. Those eight individuals are not named herein, but records of their exclusion have been and shall continue to be maintained by the Settlement Administrator and Class Counsel.

14. After due consideration of, among other things, (a) the uncertainty about the likelihood of the Settlement Class's ultimate success on the merits; (b) the range of the Settlement Class's possible recovery; (c) the complexity, expense, and duration of the litigation; (d) the substance and amount of opposition to the Settlement Agreement; (e) the state of proceedings at which the Settlement Agreement was achieved; (f) all written submissions, declarations, and arguments of counsel; and after notice and hearing, the Court finds that the settlement terms fall within the range of settlement terms that would be considered fair, adequate, and reasonable. Accordingly, this Settlement Agreement should be and is **APPROVED,** and shall govern all issues regarding the settlement and all rights of the Parties and the Settlement Class Members thereunder.

15. Defendant TBSE shall make the required payments, in accordance with the amounts and at the times set forth in the Settlement Agreement, to fund the Settlement Fund, out of

which all payments shall be made: (a) all payments to Settlement Class Members who submit an Approved Claim; (b) the Plaintiff's incentive award; (c) attorneys' fees and costs to Class Counsel; and (d) Settlement Administration Costs.

16. Approved Claimants shall be paid cash awards in the amounts and in the manner set forth in the Settlement Agreement.

17. The Court **APPROVES** a $10,000 Incentive Award to Plaintiff for his role as Class Representative. The Court finds this Incentive Award to be reasonable in light of the Class Representative's willingness and efforts with respect to taking on the risks of litigation and helping achieve the results to be made available to the Settlement Class. This amount shall be paid by TBSE in the manner set forth in the Settlement Agreement.

18. The Court **APPROVES** an award of attorneys' fees to Class Counsel in the total amount of $787,500. This amount shall be paid by TBSE in the manner set forth in the Settlement Agreement.

19. The Court **APPROVES** a recovery of costs incurred by Class Counsel in the total amount of $27,452.47. This amount shall be paid by TBSE in the manner set forth in the Settlement Agreement.

20. The Court expressly adopts and incorporates herein all of the terms of the Settlement Agreement and authorizes and directs implementation and performance of all the terms and provisions of the Settlement Agreement, as well as the terms and provisions hereof. The Parties to the Settlement Agreement shall carry out their respective obligations under that Agreement.

21. This Action is **DISMISSED WITH PREJUDICE** and without taxable costs to any Party, and judgment is entered in accordance with this Order and the Settlement Agreement.

22. Each Settlement Class Member shall be bound by the Settlement Agreement, and this Final Approval Order and Judgment, and are deemed to have fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties, and each of them. "Released Claims" are defined as:

> any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined in the Settlement Agreement), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, based on the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged sending text messages to the Settlement Class Members, including but not limited to all claims that were brought or could have been brought in the Action relating to any and all Releasing Parties.

23. Settlement Class Members who have not been properly excluded from the Settlement Class are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit or other action in any jurisdiction based on the Released Claims.

24. Should the Settlement Agreement be terminated under its terms, or the Effective Date not occur, then any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated, and this Final Approval Order shall be void and deemed vacated.

25. The Court retains jurisdiction, for one year from the date of this Order, over this Action, the Parties, and the Settlement Class Members, to determine all matters relating in any way to this Final Approval Order, the Order Granting Preliminary Approval of Class Action Settlement Agreement, and the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

26. Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 84) is **GRANTED.**

27. Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award (Doc. Nos. 85, 87) is **GRANTED.**

28. The Clerk of Court is directed to **CLOSE THIS CASE** and terminate all other pending motions as **MOOT.**

    **DONE AND ORDERED** in Chambers in Tampa, Florida, this 23rd day of April 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
All parties of record including unrepresented parties, if any